IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **Yazmin Gonzalez**, on behalf of herself an all others similarly situated, § § § | | |
| Plaintiff § | | |
| § | | |
| *versus* § | Civil Action No. 3:24-CV-453 | |
| § | | |
| **Pelican Investment Holdings LLC,** § | **JURY DEMAND** | |
| § | | |
| Defendant § | **CLASS ACTION COMPLAINT** | |
| § § § | | |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

**INTRODUCTION**

Plaintiff YAZMIN GONZALEZ (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, brings this Complaint against Defendant PELICAN INVESTMENT HOLDINGS LLC *aka* Home Warranty Services (hereinafter "Pelican") to stop their illegal practice of placing, through its telemarketers, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to herself and her own act and experience, and, as to all other matters, upon information and belief, including investigations conducted by her attorney.

## PARTIES

1. Plaintiff is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Plaintiff may be served any relevant papers via email to her counsel Omar Darwich at omar@darwhichlegal.com.

3. Defendant Pelican is a limited liability company organized and existing under the laws of Delaware and can be served via its register agent Corporate Creations Network Inc, 1521 Concord Pike, Suite 201, Wilmington, Delaware 19803.

## JURISDICTION AND VENUE

4. This action is brought by Plaintiff pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5. This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331.

6. This Court has general personal jurisdiction over the Defendant as they, upon information and belief, authorized telemarketers to place calls on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the state of Texas.

7. Venue of this this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of

events giving rise to the claim alleged herein occurred within the Western District of Texas.

8. Plaintiff has standing for their claim under the TCPA. *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540 (2016). See also, *Jamison v. Esurance Ins. Servs.*, No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016).

9. Plaintiff was harmed by Defendant's actions of calling her residential phone while her telephone number was on the Do Not Call Register, without consent.

## FACTUAL ALLEGATION

10. Plaintiff's personal cell phone (XXX)XXX-1859 has been registered on the National Do-Not-Call Registry since March 26, 2022.

11. Plaintiff has never instructed the National Do-Not-Call Registry administrator to remove her from the National Do-Not-Call Registry. Plaintiff has been on the National Do-Not-Call Registry at all times relevant to this Complaint.

12. Plaintiff is, and at all times was, a "person" as defined by 47 U.S.C. § 153(39).

13. Plaintiff's telephone number 1859 is a residential number.

14. Plaintiff's telephone number 1859 is used for personal purposes and is not associated with business.

15. Defendant Pelican offers home warranties to consumers.

16. As part of their marketing Defendant made solicitation calls to consumers' residential phone numbers.

17. Plaintiff has never had any relationship with Defendant or has ever been a customer of Defendant and never gave them her prior express written consent to receive the alleged calls in this case.

18. Within a twelve-month period, Plaintiff received nine (9) unsolicited calls from Defendant.

19. The alleged calls were to Plaintiff's from a variety of different spoofed phone numbers and the following dates and times,

    1. 08/15/24    972-740-7002    9:44 am
    2. 08/27/24    972-597-9234    9:32 am
    3. 08/28/24    972-484-7780    1:34 pm
    4. 09/03/24    972-632-4047    9:13 am
    5. 09/04/24    972-430-6935    7:27 pm
    6. 09/09/24    972-632-4628    9:35 am
    7. 09/09/24    972-484-7780    9:46 am
    8. 09/10/24    972-362-3216    10:26 am
    9. 09/16/24    972-597-9230    9:52 am

20. On calls #1 - #5 Plaintiff answered the calls and was solicited for home warranty services by agents. Plaintiff informed agents she was not interested and disconnected the call.

21. On calls #6 - #8 Plaintiff answered the calls and agents asked for someone named "Gary."

22. Plaintiff informed the agents she was not Gary and that they had the wrong number. However, they continued with soliciting her for home warranty services. Plaintiff disconnected the call.

23. Plaintiff received call #9 and the agent behind the call was looking for Gary again.

24. Plaintiff informed the caller that she was not Gary, however the agent continued soliciting her for home warranties.

25. Plaintiff was tired and annoyed by the continued solicitation calls and engaged in a call as part of her investigation to identify who was behind the calls.

26. The agent live transferred Plaintiff to an agent who identified themselves as "Chris".

27. Chris asked Plaintiff questions regarding property information, home condition, any major issues, and other qualifying questions. Chris then live transfer Plaintiff to his "Finance Manager". This individual also pursued collection of payment.

28. After a week or so Plaintiff received the home warranty policy that identified Defendant Pelican.

**Payment Plan Agreement**

Service Contract #: HWS11483

Payment Plan Provider
SING For Service, LLC a/k/a Mepco

**BUYER**

| | |
|---|---|
| Name: | YASMINE SOTO |
| Address: | 14205 CHARLES POLLOCK AVE |
| City, State, Zip: | EL PASO, TX 79938 |
| Phone: | (915) 820-1859 |
| Email: | |

**SELLER**

Dealer #: HWS

Name: Pelican Investment Holdings, LLC d/b/a/ Home Warranty Services

Address: 13217 Jamboree Road #469

City, State, Zip: Tustin, CA 92782

Phone: 1-888-743-0255

Salesperson: Christian powell (BLUE)

| Administrator | National Administrative Service Co., LLC |
|---|---|
| Contract Effective as of: | 10/16/24 |

You, the Buyer, may continue the Service Contract ("SC") by making monthly payments according to the terms of this Payment Authorization Agreement ("Agreement"). The SC is issued by "Administrator". The SC number is provided at the top of this Agreement. You and we agree to be bound by the terms of this Agreement. "We", "Us" and "Our" refer to the Seller shown above, and upon assignment of this Agreement, to SING For Service, LLC ("MEPCO"). By signing this Agreement, you are authorizing MEPCO to collect monthly payments from you in order for you to continue your benefits under the SC. The important disclosures below are part of this Agreement.

Payment Processing Center: Mepco, 10 S. LaSalle St., Suite 2310, Chicago, IL 60603
Phone: 800-397-6767 Fax: 312-853-0535

**PAYMENT SCHEDULES**

| Initial Payment | Monthly Renewable Payment | Monthly Renewable Payment Due Date |
|---|---|---|
| $89.99 | $89.99 | 16th |

HWS.M2M.DLX.NP.NW.HSC.050324

Page 1

18390_6

HWS11483    15 of 20

29. Each and every call was made with the purpose of encouraging the purchase of Defendant's home warranty services.

30. Plaintiff never requested information regarding home warranty services.

31. Upon information and belief, Defendant Pelican trained and instructed his agents on what qualifying questions to ask consumers.

32. Upon information and belief, Defendant Pelican and his agents work collectively on the phone calls in question in this instant action.

33. Defendant called Plaintiff with the direct intention to solicit home warranty services.

## BASIS FOR LIABILITY

34. Plaintiff realleges paragraphs one through thirty-three and incorporates them herein as if set forth here in full.

35. Even if Defendant did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violation under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

36. Plaintiff realleges paragraphs one through thirty- five and incorporates them herein as if set forth here in full.

37. Defendant authorized agents to generate prospective customers through illegal telemarketing calls.

38. Accordingly, the FCC has explained that its "rules generally established that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA , CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

39. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

40. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN- Doc # 1 Filed: 04/13/23 Page 7 of 11 – Page # 7 8liable for telemarketing calls if the telemarketer "has apparent (if not actually) authority" to make the calls. 28 FCC Rcd at 6576 (¶ 34).

41. Agents solicited Plaintiff on behalf of Defendant. Accordingly, agents had Defendant's actual authority to solicit Plaintiff through illegal telemarketing calls.

## APPERENT AUTHORITY

42. Plaintiff realleges paragraphs one through forty-one and incorporates them herein as if set forth here in full.

43. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶

46).

44. Upon information and belief, Defendant authorized his agents to generate prospective business through illegal telemarketing.

45. Upon information and belief, agents called on behalf of Defendant and solicited Plaintiff for home warranty servoces. The interrogation of their sales efforts was so seamless that appeared to Ms. Gonzalez that the agents and Defendant all appeared to be acting together as the same company.

46. Consumers, including Plaintiff, reasonably believed and relied on the fact that agents had received permission to sell, market and solicit Defendant's services.

47. As a direct and proximate result of agent's illegal phone calls – which were made on behalf of and with the authority of the Defendant, Plaintiff suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

48. Plaintiff realleges paragraphs one through forty-seven and incorporates them herein as if set forth here in full.

49. Upon information and belief, Defendant knowingly and actively accepts business that originated through the illegal calls placed by agents.

50. By accepting these contacts and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of agents, as described in the Restatement (Third) of Agency.

51. Defendant ratified agent's TCPA violation by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

52. Defendants further ratified agent's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

53. As a direct and proximate result of agent's illegal phone calls, Ms. Gonzalez and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

54. Plaintiff realleges paragraphs one through fifty-three and incorporates them herein as if set forth here in full.

55. The calls harmed Plaintiff by causing the harm that Congress sought to prevent – a "nuisance and invasion of privacy."

56. The calls harmed Plaintiff by trespassing upon and interfering with her rights and interests in her cellular telephone.

57. The calls harmed Plaintiff by intruding upon her seclusion.

58. Plaintiff and all members of the Classes, defined below, have been harmed, injured, and damaged by the calls including, but not limited to; reduce device storage, reduce data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

## CLASS ALLEGATIONS

59. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

    **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) who Defendant called and every entity calling on behalf of Defendant (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

    **Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendant called and every entity calling on behalf of Defendant (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

60. **Class Definition**: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

61. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant's have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant' records.

62. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited messages.

63. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

64. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

65. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:
    a. Whether the unsolicited calls were caused by the Defendant;
    b. Whether the unsolicited calls promoted the Defendant's products or services;
    c. Whether the Defendant checked the phone numbers to be called against the Federal Do Not Call registry;

    d.  Whether the Defendant obtained written express consent prior to sending the calls;

    e.  Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendant's conduct.

66. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## LOCAL RULES

67. Plaintiff, pursuant to local rules, shall move to certify this complaint as a Class Action. Plaintiff will reidentify the classes, exclusions of the classes, numerosity, typicality, adequacy of representation, generality,

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of All Classes- Against Defendant)**

68. Plaintiff realleges paragraphs one through sixty-seven and incorporates them herein as if set forth here in full.

69. The telephone numbers of Plaintiff and the Class are registered on the Do Not Call Registry.

70. Defendant and/or their agents or telemarketers placed unsolicited phone calls to Plaintiff's and the Class members' DNC registered telephones without having their prior written consent to do so.

71. Defendant's actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

72. Defendant's soliciting phone calls were made for the commercial purpose of soliciting business.

73. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

74. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

75. Plaintiff also seeks a permanent injunction prohibiting Defendant from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**Second Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On Behalf of Plaintiff and the Texas Subclass – Against Defendant)**

76. Plaintiff realleges paragraphs one seventy-five and incorporates them herein as if set forth here in full.

77. Defendant and/or their agents or telemarketers placed illegal solicitation sales calls to Plaintiff and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

78. Upon information and belief the actions of the Defendant also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

79. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

80. As a result of the Defendant's violations of Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

81. As a result of the Defendant's violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of the Class prays for the following relief:

A. An order certified the Class as defined above, appointing Ms. Gonzalez as the Class representative and appointing her counsel as Class Counsel (after Ms. Gonzalez files her respective motion pursuant to this Court's local rules);

B. An order declaring that the Defendant's actions, as set out above, violate 227(c) willfully and knowingly;

C. An award of $500.00 per call, to Plaintiff and members of the respective class, in statutory damages arising from the TCPA §227(c) for each violation;

D. An award of $1,500.00 per call in statutory damages, to Plaintiff and members of the respective class, arising from the TCPA §227(c) for each intentional violation;

E. An order declaring that the Defendant's actions, as set out above, violate Texas Business and Commerce Code 302.101;

F. An award of $5,000.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101 to Plaintiff and the respective class;

G. An injunction requiring Defendant to cease sending all unlawful calls;

H. An award of reasonable attorneys' fees and costs; and

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 19th day of December 2024.

                          Respectfully Submitted,

                          The Darwich Law Firm, LLC
                          /Omar F. Darwich/ _____
                          Omar F. Darwich
                          Tx Bar No. 24124686

                          10921 Pellicano Dr, #100
                          El Paso, TX 79935

                          (915) 671-2221
                          omar@darwichlegal.com

                          **ATTORNEY FOR PLAINTIFF**